**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JUDITH K. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:05-cv-1505-SEB-VSS |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Judith K. Miller ("Miller") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

## I.  BACKGROUND

Miller applied for DIB and SSI on March 13, 2003, alleging an onset date of November 7, 2002. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on October 5, 2004. Miller was present, accompanied by her attorney. Medical and other records were introduced into evidence. Miller testified.

The ALJ denied Miller's application on May 21, 2005. On August 19, 2005, the Appeals Council denied Miller's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed.  The court has jurisdiction over Miller's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Miller met the disability insured status requirements of the Act on November 7, 2002, the date she stated she became unable to work, and continued to meet them through the date of the ALJ's decision; (2) Miller had not engaged in substantial gainful activity since the alleged onset date; (3) the medical evidence established that Miller had severe degenerative joint disease with cervical fusion, but that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; (4) Miller's alleged pain and functional limitations were not fully credible as they were not supported by the medical evidence or relevant credibility factors; (5) Miller had the residual functional capacity ("RFC") to perform the physical exertional and nonexertional requirements of work except that she was limited to lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; (6) Miller was unable to perform her past relevant work as a cook, screen technician and camera stripper; (7) Miller had the RFC for the full range of light work; (8) Miller was 54 years old, which is defined as closely approaching advanced age, she had a GED, and in view of her age and RFC, the issue of transferability of work skills is not material; and (9) section 404.1569 of Regulations No. 4 and section 419.969 of Regulations No. 16 and Rule 202.14, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4 direct a conclusion that, considering Miller's RFC, age, education, and work experience, she was not disabled. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Miller was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

**B.     Analysis**

The ALJ determined that Miller had severe degenerative joint disease with cervical fusion, but that she could perform the full range of light work. Miller argues that the ALJ's decision is not supported by substantial evidence.

Miller's primary argument is that the ALJ failed to discuss the portions of a May 8, 2003 medical report which were favorable to her claim for benefits. Dr. Kennedy listed Miller's diagnoses as degenerative disc disease of the cervical and lumbosacral spine, impingement syndrome of left shoulder, Reynaud's disease, and heart murmur. (R. at 112). Dr. Kennedy examined Miller and opined that Miller should be able to work 8 hours a day in a primarily seated position, lift 10 pounds, push or pull 20 pounds, and should not bend, squat, crawl or climb. *Id.* Miller points out that although the ALJ discussed Dr. Kennedy's clinical findings, he did not refer to the physician's functional limitations, nor did the ALJ articulate whether he credited or rejected such limitations.[1] (R. at 15).

During the four hour FCE completed in February 2003 by a physical therapist, Miller was able to walk for only 5 minutes on a treadmill before pain in the low back and fatigue in the lower extremities forced her to quit. (R. at 166). Her heart rate was significantly elevated at the time, indicating that she had made no attempt to deceive during the testing. *Id.* The tester opined that Miller could not stand more than 30 minutes at a time without having to sit due to pain and fatigue. (R. at 167). The tester also found that Miller had difficulty with squatting, bending, and crouching. (R. at 165-67). Although the ALJ

---

[1]The ALJ acknowledged the finding that Miller's straight leg raise test was negative bilaterally in the seated position, but positive on the right to 34 degrees and on the left to 60 degrees, but added, "which suggests malingering." (R. at 15). Miller correctly argues that nowhere did Dr. Kennedy suggest that Miller was a malingerer. (R. at 110). Miller points to the February 4, 2003, functional capacity evaluation ("FCE") completed by physical therapist Ken Theile, which stated that Miller participated in a four hour FCE during which she was "very cooperative" and "showed no attempts to deceive." (R. at 168). Consulting examiner Dr. Hoyt found Miller to be "cooperative," as did Dr. Buonanno. (R. at 292, 115 ). The ALJ's suggestion that Miller was a malingerer is not supported by substantial evidence.

discussed the FCE, he did not mention these limitations. (R. at 14).

Having reviewed the FCE, treating physician Dr. Crecelius opined on February 21, 2003, that Miller could return to light duty work with a lifting restriction of 20 pounds, and that she should undergo work conditioning. (R. at 162). Dr. Crecelius did not, however, indicate the extent of Miller's ability to walk, stand, squat, crouch, and bend. Nor did Dr. Crecelius acknowledge or discuss the portions of the FCE which indicated limitations in each of these areas.

"Light work" is characterized as lifting a maximum of twenty pounds, with frequent lifting or carrying of up to ten pounds, and standing or walking off and on, for a total of six hours during an eight-hour workday, intermittent sitting, and using hands and arms for grasping, holding and turning objects. *Clifford v. Apfel*, 227 F.3d 863, 869 n.2 (7th Cir. 2000)(citing 20 C.F.R. § 404.1567(b) and Social Security Ruling 83-10).

The ALJ concluded that Miller could perform the full range of light work, including the ability to lift 20 pounds occasionally and 10 pounds frequently. (R. at 18). He stated that his assessment was the same as that offered by the state agency, the FCE, and her treating physician. *Id.* Although the FCE and treating physician indicated that Miller could perform "light" work, that determination does not necessarily translate to such a finding pursuant to the definition of "light work" under the Act. Indeed, the FCE's restriction on Miller's ability to stand and walk does not support a finding that she could perform the full range of light work.

In addition, the ALJ stated that he relied on the testimony of a vocational expert, (R. at 18), and yet it is undisputed that there was no vocational expert testimony offered in this case. Although the reports on which the ALJ relied are generally consistent with Miller's lifting restrictions, which match up with a light work assessment, the ALJ did not discuss the FCE and Dr. Kennedy's report to the extent they indicate that Miller was not able to do prolonged walking or standing, bending, squatting or crouching. It is not clear whether the ALJ rejected Dr. Kennedy's opinion on these issues and if so, on what basis. An ALJ may not select and discuss only evidence which favors his ultimate conclusion. *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). By finding that Miller could perform the full range of light duty, the ALJ implicitly found that she could stand or walk off and on for a total of 6 hours, and had no further exertional restrictions on activities such as bending, squatting, or crouching. No examining physician specifically found this to be the case. The non-examining state agency physicians did. (R. at 85-86).

"An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citation omitted). What is lacking in this case is an evaluation on the part of the ALJ of the evidence relating to Miller's ability to stand, walk, squat, crouch, and bend. The court cannot trace the path of the ALJ's reasoning in relation to these activities, and, therefore, the ALJ's finding that Miller could perform the full range of light work is not supported by substantial evidence.

Miller also contends that the ALJ failed to properly assess her shoulder limitations. Examining physician Dr. Kennedy noted crepitus and tenderness to palpation of the left shoulder and limited range of motion. (R. at 111). Dr. Kennedy diagnosed an impingement syndrome of the left shoulder. (R. at 112). Dr. Hoyt also noted bilateral shoulder popping and pain, and that Miller had not reported her separate shoulder problems until more recently because she thought that it was all related to her neck. (R. at 291). He recommended that a possible tendon injury be evaluated. (R. at 293). The FCE completed in February 2003 noted that Miller had difficulty holding her arms up above 90 degrees for more than two minutes and that she could do very little overhead work. (R. at 165). Although the ALJ acknowledged that Dr. Kennedy, Dr. Hoyt, and the FCE found limited range of motion and/or pain in her shoulder, (R. at 14-15), he did not discuss the other findings related to her shoulder nor how such restrictions might effect her ability to perform work. On remand, the ALJ shall discuss the evidence relating to Miller's shoulder problems in determining his RFC assessment.

As appropriate, on remand the ALJ shall consult a vocational expert to determine how Miller's nonexertional limitations would impact her ability to work. "[W]here a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). *See also Herron v. Shalala*, 19 F.3d 329, 336-37 (7th Cir. 1994) (the use of the grid is inappropriate where the claimant's nonexertional impairments are so severe as to limit the range of work she can perform, in which case a determination of disability is made through the testimony of vocational experts who can indicate what work a claimant is capable of performing.).

With regard to Miller's credibility, she points out several errors in how the ALJ evaluated the evidence. The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). The ALJ determined that Miller's allegations concerning the severity of her symptoms and limitations were not reasonably consistent with the objective medical evidence or other evidence of record. (R. at 17). Miller notes that the ALJ discredited Miller's testimony that when she turned her head while eating it caused her to choke. The ALJ stated that no treatment notes reflected any difficulty with choking. On the contrary, Miller did report this to Dr. Hoyt, (R. at 292), and physical therapy notes reflect a problem with swallowing. (R. at 120). As far as the ALJ's indication that Miller might be a malingerer, that issue has been addressed in the footnote in this Entry. Moreover, Miller argues that the minimal daily activities that she could perform do not support a finding that she could perform the full range of light work. Indeed, a claimant's ability to perform minimal daily activities does not establish that the claimant is capable of substantial physical activity. *See Clifford,* 227 F.3d at 872 (performing some household chores, cooking simple meals, and occasional grocery shopping are "minimal" activities). The ALJ concludes without reference to any supporting evidence that Miller's ability to do some sweeping, dusting, and folding laundry suggested that her upper extremity function was not as limited as she alleged. These aspects of the ALJ's credibility assessment are patently wrong and taint the overall determination, and therefore, should be reconsidered on remand.

## III.  CONCLUSION

For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  10/31/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana